21-948-cv
Holick v. Cellular Sales

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2021

(Argued: April 25, 2022                      Decided:  September 7, 2022)

Docket No. 21-948-cv

_____

JAN P. HOLICK, JR., on behalf of themselves and all others similarly situated,
STEVEN MOFFITT, on behalf of themselves and all others similarly situated,
JUSTIN MOFFITT, on behalf of themselves and all others similarly situated,
GURWINDER SINGH, on behalf of themselves and all others similarly situated,
JASON MACK, on behalf of themselves and all others similarly situated,
TIMOTHY M. PRATT, on behalf of themselves and all others similarly situated,
WILLIAM BURRELL,

*Plaintiffs-Appellees*,

v.

CELLULAR SALES OF NEW YORK, LLC, CELLULAR SALES
OF KNOXVILLE, INC.,

*Defendants-Appellants*.

_____

Before: POOLER, WESLEY, and CARNEY, *Circuit Judges*.

Cellular Sales of New York, LLC and Cellular Sales of Knoxville, Inc. (collectively "Cellular") appeal from the March 15, 2021 order of the United States District Court for the Northern District of New York (Stewart, *M.J.*) granting attorney's fees to plaintiffs. Cellular argues that (1) the district court abused its discretion in finding that Plaintiffs' successful minimum wage and overtime claims were sufficiently intertwined with their unsuccessful unfair wage deduction, unpaid compensable work, and untimely commissions claims under the Fair Labor Standards Act and New York Labor Law; and (2) regardless of whether the claims were intertwined, that the district court abused its discretion in reducing the attorney's fees award by only 40 percent given Plaintiffs' relative lack of success. We disagree, and affirm for the reasons set forth below.

Affirmed.

_____

C. LARRY CARBO, III, Chamberlain, Hrdlicka, White, Williams & Aughtry, P.C. (Julie R. Offerman, *on the brief*), Houston, TX, *for Appellants*.

RONALD G. DUNN, Gleason, Dunn, Walsh & O'Shea, Albany, NY, *for Appellees.*

2

POOLER, *Circuit Judge*:

Cellular Sales of New York, LLC and Cellular Sales of Knoxville, Inc. (collectively "Cellular") appeal from the March 15, 2021 order of the United States District Court for the Northern District of New York (Stewart, *M.J.*) granting attorney's fees of $576,870.30 to name plaintiffs Jan Holick, Steven Moffitt, Justin Moffitt, Gurwinder Singh, Jason Mack, William Burrell, and Timothy Pratt ("Plaintiffs"). The parties reached a settlement on the merits claims, leaving only the issue of the attorney's fee award to be settled on appeal. *See Holick v. Cellular Sales of N.Y., LLC*, No. 1:12-CV-584 (DJS), 2021 WL 964206 (N.D.N.Y. Mar. 15, 2021) ("*Holick III*").

Cellular  argues that (1) the district court abused its discretion in finding that Plaintiffs' successful minimum wage and overtime claims were sufficiently intertwined with their unsuccessful unfair wage deduction, unpaid compensable work, and untimely commissions claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law; and (2) regardless of whether the claims were intertwined, that the district court abused its discretion in reducing the

attorney's fees award by only 40 percent given Plaintiffs' relative lack of success. We disagree, and affirm for the reasons set forth below.

**BACKGROUND**

Plaintiffs were owners of companies that sold cellular service plans and devices to customers through contracts with Cellular , an authorized Verizon Wireless dealer that operates retail stores in upstate New York. *Holick v. Cellular Sales of N.Y., LLC*, No. 1:12-CV-584 (DJS), 2019 WL 1877176, at *1 (N.D.N.Y. April 26, 2019) ("*Holick I*").

The specifics of the compensation model between Plaintiffs and Cellular are complex and not relevant to this appeal, but in broad strokes Cellular  paid Plaintiffs commissions for every cellular service plan they sold. However, if a customer canceled their cell service plan within 180 days of purchasing it, then Cellular would deduct the sale from its following check to the Plaintiffs. *Id.* at *1-2; J. App'x at 336 ¶¶ 22-23. Plaintiffs were not paid an hourly wage or a salary. *Holick I*, 2019 WL 1877176, at *2.

Plaintiffs brought a class action complaint against Cellular  for unfair wage deductions, unpaid compensable work, untimely commissions, unjust enrichment, and failure to pay minimum wage and overtime under the FLSA

4

and New York Labor Law. "Essentially, Plaintiffs claim that Defendants misclassified them as independent contractors instead of employees as defined by the FLSA and [New York Labor Law], thus depriving them of employee benefits required by law." *Id*. at *2 (internal quotation marks omitted). Plaintiffs sought more than $4 million in class damages, and roughly $700,000 in damages for the name Plaintiffs. *Holick III*, 2021 WL 964206, at *4.

In April 2019, the district court denied Plaintiffs' motion for class certification, finding that:

> Plaintiffs have failed to demonstrate that they are similarly situated to the degree necessary to maintain an FLSA collective action, or to certify a Rule 23 class action. The Court finds that Plaintiffs' disparate and highly individualized experiences with the Defendants are not conducive to the production of representative evidence required to proceed collectively. Plaintiffs' inability to present common proof demonstrating the nature of their employment relationship with Defendants frustrates the possibility of collective resolution and militates against considerations of fairness and procedure.

*Holick I*, 2019 WL 1877176, at *1. Plaintiffs appealed the district court's decision.

Plaintiffs then moved for partial summary judgment and Cellular cross-moved for summary judgment. The district court denied Plaintiffs' motion in

5

full, and granted Cellular's motion as to Plaintiffs' claims for wage deductions, untimely commissions, and unpaid compensable work. *Holick v. Cellular Sales of N.Y., LLC*, No. 1:12-CV-584 (DJS), 2019 WL 3253941, at *1 (N.D.N.Y. July 19, 2019) ("*Holick II*"). It found questions of material fact as to whether the Plaintiffs were employees or independent contractors under the FLSA and New York Labor Law, as well as on the minimum wage and overtime claims. *Id*.

The case proceeded to a bench trial. The district court determined that the Plaintiffs were employees of Cellular and granted them judgment of $11,121 for unpaid minimum wages and overtime, plus liquidated damages and prejudgment interest. *Holick III*, 2021 WL 964206, at *1. Cellular appealed from the district court's decision.

While the merits appeals were pending, the district court proceeded to the issue of fees and costs, to which Plaintiffs were entitled as the prevailing party. Plaintiffs sought $961,450 in attorney's fees and costs of $46,065. *Id*. at *2. The district court noted that "the degree of success obtained by the plaintiff" was "the most critical factor" in determining reasonable attorney's fees. *Id*. at *2-3 (internal quotation marks omitted). Cellular argued that the fee needed to be drastically reduced, in relevant part, because Plaintiffs were unsuccessful on

6

their unlawful wage deduction, untimely commission and compensable work claims. *Id.* at *4. The district court disagreed, finding that the unsuccessful claims were inextricably intertwined with the successful claims:

> Plaintiffs' claims were all based upon the terms of the contracts between Plaintiffs and Defendants, the circumstances under which commissions were earned, and the formula by which Plaintiffs were paid. These claims would largely require similar discovery and proof and would be difficult to sever in the billing records. These claims are, generally, sufficiently intertwined with Plaintiffs' claims that were ultimately successful – their overtime claims and minimum wage claims – that a further reduction is not needed to account for the dismissed claims.

*Id.* The district court agreed with Cellular that the unjust enrichment claim voluntarily dismissed by Plaintiffs was not intertwined, and deducted the time billed for that claim. *Id.* at *5. The district court granted Plaintiffs $576,870.30 in attorney's fees to Plaintiffs—a roughly 40 percent deduction from the amount Plaintiffs initially sought. *Id*. This appeal followed.

Shortly before oral argument took place in this appeal, the parties, with the help of the Second Circuit mediation program, reached an agreement to settle the pending merits appeals. The parties stipulated to conditional certification of collective actions, and provided for payments to 41 opt-in plaintiffs. Cellular

agreed to pay the Plaintiffs and opt-in plaintiffs a maximum of $89,710.61.

**[Settlement Agreement Pg. 4 ¶ 1.10]** The parties were unable to settle their dispute as to the attorney's fee award.

## DISCUSSION

We review a district court's decision to grant attorney's fees for abuse of discretion. *Gortat v. Capala Bros., Inc.*, 795 F.3d 292, 295 (2d Cir. 2015). "We afford a district court considerable discretion in determining what constitutes reasonable attorney's fees in a given case, mindful of the court's 'superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'" *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

### I.     Intertwining

"In addition to providing for liquidated damages, the FLSA directs courts to award prevailing plaintiffs reasonable attorney's fees and costs." *Barfield*, 537 F.3d at 151; *see also* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). What

constitutes "reasonable attorney's fees" is the subject of much litigation, as it involves far more than determining whether the rate charged and hours billed are fair and appropriate.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. A court determines whether the hours claimed by the prevailing side were "reasonably expended," and adjusts the award accordingly. *Id.* District courts are then charged with factoring in "other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the results obtained." *Id.* at 434 (internal quotation marks omitted).

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435. Conversely, "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.* at 440. Courts look to "[b]oth 'the quantity and quality of relief obtained,' as compared to what the plaintiff sought to achieve as evidenced in her complaint," *Barfield*, 537 F.3d at 152 (quoting *Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir. 1997)). "Indeed, this

comparison promotes the court's central responsibility to make the assessment of what is a reasonable fee under the circumstances of the case." *Id.* (internal quotation marks omitted).

When a plaintiff succeeds on some claims but not others, courts must also consider whether the claims brought are "based on different facts and legal theories," or if the claims "involve a common core of facts or [are] based on related legal theories." *Hensley*, 461 U.S. at 434-35. Where the work on successful claims is unrelated to work on the unsuccessful claims, the "work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved." *Id.* at 435 (internal quotation marks omitted). But where there is a common core of facts, or related legal theories, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id*. In such cases, the successful and unsuccessful claims are intertwined, such that "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id*. Thus, "[a]ttorney's fees may be awarded for unsuccessful claims as well as successful ones [] where they are inextricably intertwined and involve a common core of

10

facts or are based on related legal theories." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (internal quotation marks omitted).

Here, Cellular challenges the district court's finding that the successful and unsuccessful claims were intertwined. The district court found:

> Plaintiffs' claims were all based upon the terms of the contracts between Plaintiffs and Defendants, the circumstances under which commissions were earned, and the formula by which Plaintiffs were paid. These claims would largely require similar discovery and proof and would be difficult to sever in the billing records. These claims are, generally, sufficiently intertwined with Plaintiffs' claims that were ultimately successful – their overtime claims and minimum wage claims – that a further reduction is not needed to account for the dismissed claims.

*Holick III*, 2021 WL 964206, at *4.

Cellular argues that the successful claims and unsuccessful claims were not intertwined because the only common legal issue is whether plaintiffs were employees or independent contractors; and the elements for each of the claims do not overlap. For the minimum wage and overtime claims, Cellular argues that the elements involve an employment relationship, FLSA coverage, and what hours the plaintiffs worked for which they did not receive minimum wage or overtime pay.

11

After the district court determined the Plaintiffs were employees, Cellular argues, no common legal issue remained between this successful claim and the unsuccessful claims. Cellular argues that the parties' contracts and agreements, including when commissions became earned, is irrelevant to the analysis of the minimum wage and overtime claims. Cellular argues that only unsuccessful claims required examining the terms of the parties' contracts, including the commissions schedule and formula, circumstances and timing in which the commissions were earned, and the parties' course of dealings.

However, *Hensley* requires the district court to consider whether the legal theories are related, not whether they raise identical legal issues. 461 U.S. at 435. It also requires asking whether the claims arise from a "common core of facts." *Id.* Here, there is clearly a common legal issue undergirding each of the claims: whether Plaintiffs are employees or independent contractors, and all of the legal theories involve wage and hour claims brought under the FLSA and New York Labor Law. Plaintiffs' claims all arise from a common set of facts: the conditions of employment between Plaintiffs and Cellular . Although Cellular attempts to parse differences between the specific elements required for each individual

12

claim, each requires looking to the facts that set out Plaintiff's employment relationship with Cellular .

Cellular  also argues that the district court failed to properly interpret our summary order in *Sanchez v. Oceanside First Class Roofing, Inc.*, 818 Fed. App'x 106 (2d Cir. 2020). It argues that *Sanchez* stands for the proposition that claims are "not intertwined simply because both claims required the plaintiffs to prove they were employees." Appellant's Br. 29. However, *Sanchez*—a nonprecedential summary order—is readily distinguishable. There, the plaintiffs sued for damages related to unpaid overtime and the failure to provide wage notices. The district court found for the defendant on the overtime claims but found for plaintiff on the wage notice claims. *Sanchez*, 818 F. App'x at 107. Nonetheless, the district court found "that the overtime claims and wage-notice claims were inextricably intertwined, such that fees could be awarded for all of the attorneys' work (despite Plaintiffs' marked lack of success on the bulk of their claims)." *Id.* We disagreed, finding that the claims rested on entirely different legal theories and required different evidentiary showings, as "the overtime claims required proof as to what hours Plaintiffs worked, while the notice claims required only a showing that notice was not given (which Oceanside admitted it

13

failed to do)." *Id.* at 108. We also found the fee award inappropriately high because at trial, "the district court found [Plaintiffs'] testimony regarding their work schedule not credible." *Id.* at 107. No such credibility issues are implicated here, and as the district court aptly noted, the successful and unsuccessful claims here all required a parsing of the contracts between Plaintiffs and Cellular, an examination of how commissions were earned, and the formula that determined Plaintiffs' pay. *Holick III*, 2021 WL 964206, at *4.

Indeed, district courts in this Circuit regularly find claims similar to the ones asserted here to be intertwined. In *Bond v. Welpak Corporation*, plaintiffs brought three FLSA claims: failure to pay overtime, failure to pay wages in a timely manner, and failure to provide wage notices. No. 15-cv-2403, 2017 WL 4325819, at *1 (E.D.N.Y. Sept. 26, 2017). Plaintiffs only succeeded on the overtime pay claim. *See id.* at *2. The district court found the successful and unsuccessful claims intertwined, as "Plaintiffs' wage notice and frequency of pay claims, [] are not readily severable from their overtime claims because each involved a common core of facts." *Id.* at *6. Similarly, in *Cabrera v. Schafer*, the plaintiff brought claims under the FLSA and New York Labor Law for failure to pay overtime wages, failure to pay spread-of-hours wages, and failure to provide

14

proper wage notices. No. 12-cv-6323, 2017 WL 9512409, at *1 (E.D.N.Y. Feb. 17, 2017), *report and recommendation adopted*, 2017 WL 1162183 (E.D.N.Y. Mar. 27, 2017). The jury found for defendants on the failure to pay overtime and failure to provide wage notices claims, but awarded plaintiff roughly $750 in damages for the spread-of-hours claim. The district court found the claims intertwined, as "all of Plaintiff's claims arise from his employment at Defendant's business." *Id.* at *9. All of plaintiff's claims involved allegations arising under related wage and hour statutory provisions, the district court found, and therefore logically involve the same nucleus of operative facts:

> Further, the discovery conducted would have logically merged given the relatedness of Plaintiff's claims when viewed against the factual backdrop of this case. Therefore, to view each discrete claim as a completely separate and stand-alone claim would be altogether artificial and would not give meaning to the underlying circumstances upon which such claims arose. Indeed, this is not a case where Plaintiff brought wholly independent causes of action based upon unrelated statutes requiring altogether independent elements of proof that could be logically severed. Rather, the statutes involved and the factual predicates required for a prima facie case are so intertwined that attempting to separate them would border on being a futility. To the extent Defendants argue otherwise, they ignore the realities underlying the instant claims and the Court declines to adopt their tenuous position.

15

*Id.* And as discussed above, the Supreme Court in *Hensley* noted that unrelated claims were likely to be uncommon, and that most civil rights claims will involve a common core of facts, or be grounded in related legal theories, or both. *See Hensley*, 461 U.S. at 435. Here, Plaintiffs brought wage-and-hour statutory claims that clearly arise from a common nucleus of operative fact regarding their time working for Cellular. Given the common facts involved, the district court's finding that the discovery involved in litigating the unpaid overtime wage claims is inseparable from the discovery involved in the unfair wage deductions, unpaid compensable work, or untimely commissions claims is well supported.

**II.     Fee award**

Cellular next argues in the alternative that even if the claims are intertwined, a 40 percent reduction in fees is insufficient given that Plaintiffs won but a fraction of what they originally sought. Based on the record here, we cannot say that the district court abused its discretion by declining to reduce the fee award further to account for Plaintiffs' lack of success on several of their individual claims.

"Both the quantity and quality of relief obtained, as compared to what the

16

plaintiff sought to achieve as evidenced in her complaint, are key factors in determining the degree of success achieved." *Barfield*, 537 F.3d at 152 (internal quotations omitted). In analyzing a prevailing party's degree of success, a court looks to the party's "primary aim" in the litigation and the extent to which the party achieved that goal. *Id.* "[T]his comparison promotes the court's central responsibility to make the assessment of what is a reasonable fee under the circumstances of the case." *Id*. (internal quotations omitted).

As Cellular points out, the unsuccessful claims held the potential for a far greater damages award than the successful minimum wage and overtime claims provided. And at the time the fee award was determined, Plaintiffs failed to achieve their primary objective: pursuing their claims as a collective or class action. Given this, Cellular argues the district court committed legal error by not reducing the fee award significantly more, suggesting that an appropriate amount would be $50,000.

Attorney's fee awards are reviewed under a deferential abuse of discretion standard. "When a district court is vested with discretion as to a certain matter, it is not required by law to make a *particular* decision." *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001). "Rather, the district court is empowered to make

a decision—of *its* choosing—that falls within a range of permissible decisions." *Id.* Our review "afford[s] a district court considerable discretion in determining what constitutes reasonable attorney's fees in a given case, mindful of the court's 'superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'" *Barfield*, 537 F.3d at 151 (quoting *Hensley*, 461 U.S. at 437).

Guided by the standard of review, we affirm. The *Barfield* panel's affirmation of a 50 percent reduction in fees where a collective action was sought but not achieved lends support to Cellular's argument, but *Barfield* does not create a bright-line rule mandating a 50 percent reduction every time plaintiffs seek but fail to achieve a collective action. Rather, the *Barfield* panel's affirmance simply stands for the proposition that under the facts of that case, a 50 percent reduction was "within [the] range of permissible decisions." *Zervos*, 252 F.3d at 169. Here, the district court was well aware of Plaintiffs' lack of success—it noted that Plaintiffs were not able to achieve a class action or class certification, and that Plaintiffs received just a fraction of the damages sought. *Holick III*, 2021 WL 962406, at *4. It observed that Plaintiffs' estimate that roughly 18 percent of the fee sought was "devoted exclusively" to pursuing class and collective

certification was likely low, because "it is not clear" that estimate "fully encompassed all requested fees related to the broader collective and class action components of the case." *Id*. Taking the lack of success and other factors into consideration, the district court then reduced the requested fee by 40 percent. A fuller explanation of exactly how it arrived at a 40 percent reduction would have benefited both the parties and this Court, but it cannot be said that the district court exceeded the bounds of its discretion in reaching its conclusion.

While a reasonable fee award in an FLSA case necessarily reflects plaintiffs' level of success, "[f]ee awards in wage and hour cases should encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Fisher v. SD Protection, Inc.*, 948 F.3d 593, 603 (2d Cir. 2020) (internal quotation marks omitted). We have observed that "FLSA cases often involve ordinary, everyday workers who are paid hourly wages and favorable outcomes frequently result in limited recoveries." *Id.* at 603-04. "The purpose of the FLSA attorney fees provision is to inure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances. Courts should not place an undue emphasis on the amount of the plaintiff's

19

recovery because an award of attorney fees . . . encourages the vindication of congressionally identified policies and rights." *Cabrera*, 2017 WL 9512409, at *4 (alterations and citation omitted).

Finally, we note that shortly before oral argument in this case the parties entered into a settlement agreement resolving the merits appeals, which resulted in 41 opt-in plaintiffs being eligible for awards. The name and opt-in plaintiffs are to share in up to $89,710,61—an increase from the district court's award of $11,121. At oral argument, the panel asked whether this development required a remand to the district court, suggesting that the improved result might bolster the district court's original decision—or even lead to a greater fee award. Plaintiffs' counsel urged against remand, stating he was satisfied with the fee award as it stood.

When the facts implicating a decision shift, it is customary to remand for the district court to consider the new landscape. Plaintiffs' reluctance to return to district court is understandable given that this case began in April 2012. Both sides litigated the issues fiercely, resulting in motions to dismiss, to certify, to decertify and for summary judgment, followed by a bench trial. Three appeals were taken, and the two related to the merits were only settled during the

20

appellate process. Moreover, with Cellular proposing a drastically reduced fee award of $50,000, a remand seems likely to generate further motion practice and a second appeal. Plaintiffs are willing to forgo a possibly higher fee in exchange for peace. For these reasons, we decline to remand.

## CONCLUSION

For the reasons given above, we affirm.